NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0154n.06

No. 22-3417

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

Apr 03, 2023
DEBORAH S. HUNT, Clerk

LAURA B. MORTON,

    Plaintiff-Appellee,

v.

KEVIN JOHN O'BRIEN; KEVIN O'BRIEN & ASSOCIATES CO., LPA,

    Defendant-Appellant.

)
)
)
)
)
)
)
)
)
)
)
)
)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

OPINION

Before: SUTTON, Chief Judge; LARSEN and DAVIS, Circuit Judges.

LARSEN, Circuit Judge. Laura B. Morton's (Morton's) daughter, Laura L. Morton, took out a $200 loan. After Morton's daughter defaulted on the loan, Kevin O'Brien, a debt collector, sent Morton a letter threatening to foreclose on her house, although Morton was not a signatory to the loan. Morton sued O'Brien and his law firm under the Fair Debt Collection Practices Act (FDCPA). A jury found for Morton and awarded her $51,000 in damages, and the district court awarded her attorneys' fees and costs. O'Brien filed a post-judgment motion challenging the verdict and damages. He now appeals the denial of that motion and the award of attorneys' fees. We AFFIRM.

I.

Laura B. Morton shares a first and last name with her daughter, Laura L. Morton, but the two women have different middle names. In 2003, Morton's daughter obtained a $200 loan from Columbus Checkcashers, Inc. Morton's daughter never repaid the loan. In 2016, Kevin O'Brien,

an attorney and debt collector who purported to be working with Columbus Checkcashers, filed a civil complaint against her in Franklin County Municipal Court. O'Brien served Morton's daughter at her residence in Blacklick, Ohio, and the court eventually entered a default judgment against her for the amount of the loan plus interest and court costs.

In 2017, with the judgment in hand, O'Brien ran a skip trace report—which allows debt collectors to find information on the whereabouts of debtors—for "Laura Morton," no middle initial. When he ran the report, the evidence suggested, he knew the debtor was "Laura L. Morton," and he found results for "Laura L. Morton" in addition to "Laura B. Morton." O'Brien also had access to other distinguishing information: he knew Morton's daughter's social security number, date of birth, and middle initial as early as 2003. Nonetheless, on May 3, 2017, O'Brien sent Laura B. Morton, the mother of the debtor, a letter addressed to "Laura Morton" at her address on Fairgate Avenue in Columbus, Ohio. The letter "carried a sense of urgency," warning Morton "that the creditor had secured a judgment lien against her home and was 'now in a position to foreclose.'" The letter gave "her a one-month deadline in which to pay the alleged debt, and caution[ed] her to give the matter her 'immediate attention' and to 'not ignore this letter.'" At trial, O'Brien testified that he knew, before he sent the letter, that the house on Fairgate Avenue was owned by Laura B. Morton.

Morton testified that she felt confused and "threatened" when she received the letter but thought a phone call to O'Brien could straighten out the mistake. Morton, her daughter, and O'Brien had a three-way phone conversation the same day Morton received the letter. After Morton's daughter explained to O'Brien that the loan was hers, not her mother's, and that they shared a first and last name but were different people, Morton asked O'Brien "if he would remove the lien from [her] property." According to Morton, O'Brien refused. After arguing with Morton's

daughter, O'Brien ended the phone call. Morton testified that the phone call left her feeling "threatened that [her] home would be foreclosed," that her fear and stress caused her to suffer from dizziness and sleeplessness, and that her blood pressure "went up some."

Morton sued O'Brien and his law firm, Kevin O'Brien & Associates Co., LPA (collectively, O'Brien), under the FDCPA. The jury found that O'Brien had violated the Act by: (1) "misrepresenting to [Morton] that she owed the alleged debt, that her house had a lien on it, or that her house was subject to imminent foreclosure;" (2) "misrepresenting that [O'Brien] had the authority to collect a debt on behalf of the creditor, Columbus Check Cashers;"[1] and (3) "falsely threatening to foreclose on [Morton's] house if she failed to pay the alleged debt." The jury awarded Morton $50,000 in actual damages and $1,000 in statutory damages. After trial, O'Brien moved under Federal Rule of Civil Procedure 50(b) for judgment as a matter of law on the ground that Morton had failed to prove actual or statutory damages. The district court denied the motion. The court then awarded Morton $88,379.85 in attorneys' fees and costs. O'Brien now appeals.

II.

A.

O'Brien filed a post-verdict motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), claiming that insufficient evidence supported the jury's verdict and damages award. But, as the district court rightly noted, O'Brien skipped the prerequisite step to filing a Rule 50(b) motion—filing a Rule 50(a) motion. Under Rule 50(a), a court may grant judgment as a matter of law "[i]f a party has been fully heard on an issue during a jury trial and

---

[1] Columbus Checkcashers was acquired by PLS Group, Inc.; the jury heard testimony that PLS relieved O'Brien of his authority to collect its debts as early as 2012.

the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a)(1). But a party must move for judgment as a matter of law under Rule 50(a) "*before the case is submitted to the jury*." Fed. R. Civ. P. 50(a)(2) (emphasis added). O'Brien didn't do that. He filed only a Rule 50(b) motion after the verdict. Rule 50(b) contemplates a "*renewed* motion for judgment as a matter of law." Fed. R. Civ. P. 50(b) (emphasis added). So it follows that a "Rule 50(a) motion must precede a Rule 50(b) motion." *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 789 (6th Cir. 2020) (relying on "plain reading of the rules, . . . constitutional concerns, . . . our case law, and . . . policy reasons").

By not filing a Rule 50(a) motion, O'Brien at least has forfeited, *see id.* at 789–90—or perhaps waived, *see Sykes v. Anderson*, 625 F.3d 294, 304 (6th Cir. 2010)—his challenges to the jury's verdict and assessment of damages. Either way, we will not hear these claims on appeal. If waived, O'Brien has abandoned his claims altogether. *See Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). And if forfeited, O'Brien has offered no argument suggesting that his is the "exceptional" case that would warrant our consideration of his unpreserved claims of error. *See id.* at 1012. O'Brien's arguments related to his Rule 50(b) motion therefore fail.

B.

O'Brien also challenges the district court's award of attorneys' fees to Morton. We review the award of attorneys' fees for abuse of discretion. *See Coursey v. Comm'r of Soc. Sec.*, 843 F.3d 1095, 1097 (6th Cir. 2016). The FDCPA allows a successful plaintiff to collect a "reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). The district court calculated attorneys' fees using the lodestar method, which "approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour

in a comparable case," based on the local rates. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551 (2010). There is "a 'strong presumption' that the lodestar figure is reasonable." *Id.* at 554.

The district court found that $400 and $425 were the respective reasonable hourly rates for Morton's two attorneys. The court based that determination on the going rates in Columbus, Ohio for consumer law attorneys of comparable experience, as explained in two local fee reports and the declaration of an expert. The district court concluded that the hours billed were reasonable overall but reduced by half the number of hours billed for preparing the fee motion itself. In total, the district court awarded $75,385 in fees for trial preparation and trial, and an additional $10,920 in fees for the work required to respond to O'Brien's two post-trial motions. Given the district court's careful consideration of counsel's location, expertise, and practice area in calculating the attorneys' fee award, we cannot say that the district court abused its discretion.

\* \* \*

For the foregoing reasons, we AFFIRM the judgment of district court.